IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CORNELL WILLIAMS | : | |
| | : | |
| v. | : | CRIMINAL NO. L-98-0258 |
| | : | CIVIL NO. L-04-2840 |
| UNITED STATES OF AMERICA | : | |

## MEMORANDUM

Now pending is petitioner Cornell Williams's ("Williams") motion to vacate his sentence under 28 U.S.C. § 2255. On July 17 and July 24, 2007, the Court held a hearing on Williams's claim that his trial counsel, Harvey Greenberg ("Greenberg"), failed to advise him adequately about the government's plea offer. For the reasons stated herein, the Court will, in a separate order, DENY the motion.[1]

### I. Background

On June 24, 1998, the Government charged Williams and others with conspiracy to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a).[2] The lengthy trial began on June 9, 1999 and concluded on July 22, 1999. After hearing all of the evidence, the jury convicted Williams and his co-defendants.

The claim now before the Court concerns a plea offer extended by the government on Thursday, July 8, 1999, four weeks into trial and only a few days before the government rested.

---

[1] The Court denied Williams's other claims in an Order dated May 30, 2007.

[2] 21 U.S.C. § 846 (2005).

1

Greenberg testified that, prior to trial, Williams maintained his innocence and rejected the idea of pursuing a plea agreement. As the trial unfolded, however, the government's evidence was stronger than Greenberg had anticipated. In particular, on July 7th, the government introduced documents seized from a house that Williams had shared with certain of his co-defendants. These documents suggested an effort to intimidate potential witnesses.

Greenberg asked Williams if he would now consider a plea bargain. Greenberg and Williams both appreciated that Williams faced the potential of a life sentence if convicted. Williams agreed. Accordingly, on July 8th, Greenberg passed a note to Assistant United States Attorney Robert Harding ("Harding") asking if the government was willing to make an offer. Later that afternoon, Harding passed a note back. In the brief note, he offered to "recommend a 10-point reduction from a base level offense 43, with a[n] enhancement for a gun being cancelled out by reduction for acceptance of responsibility. Thus, the base offense level would be 33."[3] The note insisted on a response by the next morning.

As he testified, Greenberg had questions about the offer. Was Harding offering a sentence of 135 to 168 months, which was the range that the Sentencing Table prescribed for a defendant at Level 33/Criminal History Category I? Or, did the offer contemplate a base offense level of 33, which would be subject to potential adjustments for role and other factors? Moreover, Greenberg believed that Harding did not appreciate the nuances of the murder cross-

---

[3] Govt. Resp., Ex. D. None of the notes at issue in this case survive. Greenberg, however, memorialized many of the facts surrounding the plea offer in a letter to Harding dated July 19, 1999.

2

reference, which might preclude the ten-level reduction (from 43 to 33) stated in Harding's note.[4] Greenberg needed more information before he could evaluate the offer, and he felt that Harding was not giving the defense enough time to make an informed decision.

Accordingly, on the morning of Friday, July 9th, Greenberg passed Harding another note requesting (i) more time to make a decision, and (ii) clarification whether the offer took drug quantity into account. Later that day, Harding wrote a note extending the deadline, but only to July 10th at 10 a.m. The note did not respond to Greenberg's second question.

Greenberg and Williams's accounts of what happened next differ. According to Greenberg, (i) he advised Williams that without more information he could not properly analyze the plea offer, and (ii) Williams decided to proceed with the trial. According to Williams, (i) Greenberg did not discuss the plea offer with him on July 9th, (ii) Greenberg failed to advise him that the offer would expire on the 10th, and (iii) he thought Greenberg was going to provide him with more information. Only when he called Greenberg later that weekend did he learn that the offer had expired.

The trial lasted for another two weeks. Ultimately, Williams was convicted and sentenced at Offense Level 40/Criminal History Category I. The calculations were as follows: Williams's base offense level was 38, based on a finding that Williams reasonably could have foreseen that the conspiracy involved more than 1.5 kg of crack cocaine. See U.S.S.G. § 2D1.1(c)(1) (2000). He received two additional points because the offense involved the possession of a dangerous weapon in furtherance of the conspiracy. See U.S.S.G. § 2D1.1(b)(1).

---

[4]   As will be discussed, Williams's co-conspirators were accused of murdering Anthony Hamilton, a rival drug dealer.

The murder cross-reference increased the offense level to 43, but the Court granted a three-level departure after finding that Williams had not participated in the killing. Although the resulting guidelines range was 292-365 months, the Court limited Williams's sentence to 240 months based on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000).

In this § 2255 motion, Williams faults Greenberg for the following: (i) failing to tell him that the plea offer was going to expire, (ii) misunderstanding the plea offer, (iii) failing to advise him to accept the offer, and (iv) failing to press Harding to explain the offer.[5] Williams claims that he would have accepted the offer had he been properly advised.

Because of the factual disputes underlying Williams's claims, the Court held a hearing at which Williams, Greenberg, and Harding testified. The Court appointed Michael Lawlor to represent Williams at the hearing.

II.   Standard

Ineffective assistance of counsel claims are evaluated under the Strickland two-prong test, which requires Williams to show (i) that counsel's performance was deficient, and (ii) that counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish the first prong, Williams must produce evidence that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." Id. As to the second prong, Williams must show that but for his attorney's deficient performance, the result of the proceedings would have been different. See id. The Court can address either the effectiveness or prejudice prong first, and if it finds that Williams cannot

---

[5] In his papers, Williams also claimed that Greenberg did not advise him what sentence he could face if convicted. See Docket No. 278. At the hearing, however, Williams testified that he was aware that he was facing life in prison.

4

satisfy one of the prongs, the Court's inquiry ends and the petition must be dismissed. Id. at 697.

## III.   Analysis

The Court had the opportunity to hear the testimony of both Greenberg and Williams. The Court accepts Greenberg's testimony (i) that he communicated Harding's deadline to Williams, (ii) that because of the unanswered questions he could not recommend that Williams accept the offer, and (iii) that the ultimate decision was Williams's to make. Greenberg's testimony on these points was clear and decisive and in keeping with his reputation as a careful and meticulous attorney. It is simply not plausible that Greenberg would have failed to communicate to his client a deadline that he considered too short and that he complained to the prosecutor about.

Greenberg might be faulted if his concerns about Harding's plea offer were frivolous, meaning that he failed to urge Williams to accept a plea offer that was obviously to his advantage. Such is not the case. Williams's co-conspirators were accused of having murdered Anthony Hamilton ("Hamilton"), a rival drug dealer. Both Greenberg and Harding anticipated that the Court, at sentencing, would likely apply the murder cross-reference. Under the Sentencing Guidelines, the cross-reference applies if a murder was committed in furtherance of the conspiracy. See U.S.S.G. § 2D1.1(d)(1). The cross-reference increases the base offense level to 43. See U.S.S.G. § 2A1.1. The guidelines provide, however, that the Court should consider a downward departure of up to ten levels if the defendant "did not cause the death intentionally or knowingly." U.S.S.G. § 2A1.1 Application Note 1.

The evidence at trial did not suggest that Williams was personally involved in Hamilton's murder. Accordingly, Williams would qualify for a downward departure.

5

Greenberg, who had studied the fine print of § 2A1.1, was concerned about an application note that might limit the downward departure. Application Note 1 stated that the departure should not result in a lower sentence than would be imposed absent the cross-reference. Thus, "it necessarily would be inappropriate to impose a sentence at a level below that which the guideline for the underlying offense requires in the absence of death." U.S.S.G. § 2A1.1 Application Note 1.

Greenberg appreciated that Williams's sentence on the underlying conspiracy count would be driven by the drug quantity reasonably foreseeable to him. See U.S.S.G. § 1B1.3 Application Note 2. For example, a quantity of 1.5 kg or more of crack yields an offense level of 38. A quantity between 500 grams and 1.5 kg results in a base offense level of 36. Having carefully studied the Guidelines, Greenberg believed that the Court might be unable to grant Williams the full ten-level downward departure unless the quantity attributable to him was less than 150 grams. A quantity between 50 and 150 grams results in a base offense level of 32.

This is why Greenberg wanted to reach an understanding with Harding as to drug quantity. Unless Harding and Greenberg agreed on a drug quantity that the sentencing Court would accept, the plea offer would be ephemeral.

Greenberg's concerns were justified. As the Fourth Circuit Court of Appeals observed, Williams was a member of a wide ranging conspiracy that "worked together in the sale of crack cocaine in the O'Donnell Heights housing development of Baltimore. They protected and looked out for each other in order to prevent robberies and they pooled their money to buy drugs in quantity." United States v. Stokes, 64 Fed. Appx. 352, 354 (4th Cir. 2003). This major conspiracy sold quantities of crack cocaine far in excess of the 1.5 kg of crack cocaine needed for

a base offense level of 38. At Williams's sentencing, the Government contended and the Court found that "the amount that was reasonably foreseeable to Mr. Williams . . . is far in excess of 1.5 kg of crack." Transcript, Crim. No. L-98-0258, Docket No. 251, p. 72.

In order to effectuate the plea agreement, the sentencing Court would have been required either to accept an artificially low drug quantity or depart downward. Either course of action would have been problematic. In 2001, when Williams was sentenced, United States v. Booker, 543 U.S. 220 (2005) had not yet been decided, and the Sentencing Guidelines were mandatory. This was also a multi-defendant case, and there was no apparent rationale for attributing a smaller quantity to Williams than to his co-defendants.[6] No rationale has ever been suggested for an "outside the heartland" departure.

This is not to say that the plea agreement was doomed to fail. Both Harding and Greenberg expressed the view that a sentencing court would likely have accepted a joint recommendation if properly presented. Greenberg, however, cannot be faulted for failing to press his client to accept the plea offer unless and until he understood how it could be effectuated. As Greenberg testified, the crucial factor was drug quantity, and Harding refused to discuss drug quantity with him.

Williams faults Greenberg for allowing the matter to drop and for failing to press Harding in person or by phone for more information. The Court asked Greenberg why he did not pester Harding on Friday for a meeting. Greenberg explained that he considered Harding's refusal to grant more time and his silence on drug quantity to be arrogant. He did not feel it appropriate to

---

[6]  Greenberg had an argument to make that Williams was not present in O'Donnell Heights as frequently as the others. This argument did not prevail at sentencing, however.


"do that," meaning to go hat in hand to the prosecutor. On July 19th, before the trial had concluded, Greenberg wrote Harding a strong letter in which he expressed outrage for Harding's refusal to give Williams more time to consider the offer.

Greenberg's failure to press Harding on Friday does not violate Strickland. He correctly identified the legal issues, and he asked the prosecutor for more time and more information. The prosecutor, in writing, responded. The response did not satisfy Greenberg's concerns. This was not his responsibility. Strickland did not require Greenberg to badger the prosecutor. The fact that another attorney may have not taken "no" for an answer that Friday does not render Greenberg's assistance ineffective. Moreover, there was no showing Harding would have responded to badgering by granting more time or more information.[7]

Despite Greenberg's umbrage, there are two sides of this story. In summary, Harding testified that Greenberg never approached him for a plea offer before trial. The prosecution's case was almost over, and it is unusual to be approached so late in the proceedings when all the hard work has been done. The government had proven its case against Williams and the other defendants and it had little to gain from a plea agreement. The government is under no obligation to offer a plea agreement at any time. Every plea offer must have a time limit. Harding was busy preparing the conclusion of the government's case and "preoccupied."

Harding considered a sentence for Williams of 135-168 months to be reasonable and generous. The offer was also "outcome determinative," meaning that if Williams accepted, the government would recommend the sentence to the Court. Williams would bear the risk that the

---

[7] Greenberg did, in fact, hector Harding in his strongly worded letter of the 19th. Had Harding been inclined to renew the offer, he could have done so, but he did not.

Court might reject the recommended sentence. Accordingly, from Harding's standpoint there was little to discuss.

Williams is now serving a 20-year sentence. Had the plea negotiations been handled differently he might be serving a lesser sentence. The ultimate responsibility for this result lies with Williams himself. He failed to authorize Greenberg to pursue plea negotiations at an early stage, when there would have been ample time to sort out the complicated Guidelines issues.

IV. Conclusion

For the foregoing reasons, the Court will, by separate Order DENY Williams's § 2255 motion and DIRECT the Clerk to CLOSE the case. Should Williams choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order. Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1). If this Court should deny certification, Williams may request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue the certificate.

Dated this 30TH day of August, 2007.

Benson Everett Legg
Chief Judge

9